law on the subject as it is now settled in the state of New York is fully and clearly stated by Andrews, C. J., in Knox v. American Co., 148 N. Y. 455, 42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700. When in this case Mrs. Brantingham's ownership as against Mrs. Huff was proved, at least the obligation was imposed upon Mrs. Thaxter to show that she had acquired the certificates in good faith. The principle announced in Weaver v. Barden, 49 N. Y. 286, that a purchaser of shares of corporate stock must show, as against the claim of the true owner, that he took without notice and for a valuable consideration actually paid, has not been overruled.

The foregoing considerations lead to an affirmance of this judgment unless prejudicial error was committed on the trial in rulings of the court on matters of evidence. Counsel for Mrs. Thaxter argues now that such error appears in the record. Mrs. Brantingham's ownership of the shares was proven by the judgment in her action against Mrs. Huff. The introduction in evidence of the judgment roll in that action was objected to. The court admitted it as against "the defendant Huff." Mrs. Huff is not a party to this, the present, action. There was nothing misleading in the statements or rulings of the trial judge. It was not announced that ulterior effect would not be given to the evidence. It was received to define the status of Mrs. Huff, the assignor of Mrs. Thaxter. Had Mrs. Huff been a defendant in this case, it might be urged with some plausibility that the court had limited the effect of the evidence to one defendant, and thus ruled that the other was in no way to be bound by it. We cannot infer from the declaration of the judge that the defendant Thaxter, in consequence of it, refrained from showing that she was a purchaser in good faith and for value paid. Indeed, the whole record shows that her reliance was upon the proposition that it was incumbent upon Mrs. Brantingham to show that she (Mrs. Thaxter) was not a purchaser in good faith.

The judgment should be affirmed, with costs. All concur, except VAN BRUNT, P. J., who dissents.

---

(75 App. Div. 527.)

**PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. et al. v. FEITNER et al., Tax Com'rs.**

(Supreme Court, Appellate Division, First Department. November 7, 1902.)

**1.** TAXATION—RAILROADS—ESTIMATED VALUE OF PROPERTY—"CAPITAL AND SURPLUS."

Where all the property of a railroad corporation consists of real estate, and lies in one tax district, and is leased to another corporation, the commissioners of taxes and assessments have no right to arbitrarily fix the value of the lessor's property by considering the rental value of the property, and then tax the difference between the valuation so fixed and the assessed value of the real estate as "capital and surplus."

Appeal from special term, New York county.

Certiorari by the people, on relation of the New York Central & Hudson River Railroad Company and the Spuyten Duyvil & Port Morris Railroad Company, against Thomas L. Feitner and others,

commissioners of taxes and assessments in the city of New York. From an order dismissing the writ (77 N. Y. Supp. 218), relators appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Ira A. Place, for appellants.
David Rumsey, for respondents.

McLAUGHLIN, J. This appeal is from an order dismissing a writ of certiorari to review an assessment for the purposes of taxation in the city of New York for the year 1901.

The petition upon which the writ was granted established, among other things: That the Spuyten Duyvil & Port Morris Railroad Company was the owner, and the New York Central & Hudson River Railroad Company the lessee, and, as such, in possession, of a double-track line of railroad extending from Spuyten Duyvil to Harlem Railroad Junction, a distance of a little over six miles, all located in the borough of the Bronx in the city of New York; that the New York Central & Hudson River Railroad Company was, by the lease, obligated to pay all of the taxes of every kind imposed upon the property leased; that upon the proper tax records of said city for the year 1901 the name of the Spuyten Duyvil & Port Morris Railroad Company was entered, together with a valuation of its real and personal property, capital stock, and surplus profits subject to taxation, and, in pursuance of a notice with reference thereto, that company and the New York Central & Hudson River Railroad Company appeared before the commissioners of taxes and assessments within the time provided by law, and protested against the assessment made upon its alleged capital and surplus, and in connection with such protest furnished a written statement to the effect that the entire paid-in capital stock of the lessor company was $989,000; that it had no special franchise and no personal or surplus property; that its total assets, including real estate, was $989,000, which sum was paid for its real estate, roadbeds, etc.; that notwithstanding such protest, and the proof furnished in relation thereto, the Spuyten Duyvil & Port Morris Railroad Company was assessed, upon its capital and surplus, $361,900.

In the return made by the commissioners of taxes and assessments, the foregoing facts were not denied, but the assessment upon the personal property was sought to be justified, as appears from such return, upon the ground that:

"This railroad was so situated as to necessitate a different method of valuation from that adopted in the case of an ordinary steam railroad only partly within the tax district. The whole of said railroad was within the tax district, and within the jurisdiction of the defendants for purposes of taxation. It was used, not for the ordinary purposes of a steam railroad, but to connect two sections of the lines of the New York Central & Hudson River Railroad Company's railroad, and so enable that company to run its trains into the borough of Manhattan in the city of New York. By its situation and construction, it was peculiarly adapted to the uses to which it was put, and its use was essential to the successful entry into the heart of the city of New York by a railroad approaching the city along the easterly shore of the

Hudson river. * * * Our predecessors were informed that, under the lease to the New York Central & Hudson River Railroad Company, that company undertook to pay, and paid, an annual rental for the use of said property amounting to 8 per cent. of the par capital of the Spuyten Duyvil Company ($989,000), besides all taxes and repairs, and it therefore appeared that the earning power of the said railroad property amounted to 8 per cent. net annually upon the original cost. Our predecessors determined that this earning power should be taken into consideration in determining the value of the said property, and had a direct bearing upon the market value or the sum for which the said property would sell on the second Monday of January, 1901, and therefore determined that the fair value of the said property was at least $1,483,500, instead of $989,000. Our predecessors were informed by the said application that the relator had no special franchise, and it therefore appeared that the valuation of the said property, as determined above, was not to any extent due to the ownership of a special franchise, and on that account they, therefore, made no deduction of such special franchise. Our predecessors did, however, make the only deduction from the total gross assets of the corporation, as estimated above, to which the said company was entitled,—that is to say, a deduction of the assessed value of all its real estate, amounting to $1,121,600, and by that method fixed the value of the capital and surplus of said company, liable to taxation, for the year 1901, at $361,900."

The proceeding coming on to be heard at special term, the relators moved that the entire assessment, so far as the same related to the capital and surplus, be stricken from the roll as illegal, or, in case that was denied, that evidence be taken upon the issues involved. The motion was denied, and thereupon the respondents moved that the writ be dismissed, which motion was granted, and it is from this order that the present appeal is taken.

The motion of the relators to strike the assessment from the roll should have been granted. The only basis for the assessment of property for the purposes of taxation is its real, and not imaginary, existence. The "capital and surplus" here assessed had no existence except in the imagination of the persons making the assessment. All of the property which the Spuyten Duyvil & Port Morris Railroad Company had at the time the assessment was made was included in its real estate, except its franchise, which the commissioners of taxes and assessments of the city of New York had no power to assess; the assessments upon that being made by other taxing officers under authority of section 182 and section 184 of the tax law. The assessment, therefore, was made upon property which did not exist in fact. It was illegal, and should have been so declared by the special term.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the motion to strike the assessment from the roll granted, with $50 costs and disbursements. All concur.